UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Antoine Jermaine China, ) | C/A No. 5:15-cv-03728-JMC-KDW |
| Plaintiff, ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| Ofc. Armet Coles; ) Sgt. Dustin Mincey, and ) Warden Fred B. Thompson, ) | |
| Defendants. ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging that Defendants Armet Coles, Dustin Mincey, and Fred B. Thompson violated his civil rights. This matter is before the court on the Motion to Dismiss or in the Alternative for Summary Judgment ("the Motion") filed by Defendants on May 20, 2016. ECF No. 46. As Plaintiff is proceeding pro se, the court entered a *Roseboro*[1] Order on May 23, 2016, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 47. Plaintiff responded to Defendant's Motion on July 21, 2016, making the Motion ripe for consideration. ECF No. 53. Defendants filed a Reply to Plaintiff's Response on August 8, 2016. ECF No. 54. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because the Motion is dispositive, a Report and Recommendation is entered for the court's review.

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

I.      Background

Antoine Jermaine China ("Plaintiff") was an inmate at Lee Correctional Institution when this case was filed. ECF No. 1 at 2. Plaintiff filed his Complaint on September 15, 2015, asserting claims for excessive force in violation of the Eighth Amendment. *Id.* Plaintiff's Complaint was signed under penalty of perjury. *Id.* at 6. Specifically, Plaintiff alleges that an incident of excessive force occurred at Lieber Correctional Institution on October 17, 2012 ("the incident") when he tried to get Defendant Coles to assist him in contacting the supervisor in charge of moving Plaintiff into protective custody. *Id.* at 3. Plaintiff alleges that his requests to communicate were rudely turned away and Plaintiff's roommate decided to flood their cell to force officials to give them attention. According to Plaintiff, Defendant Coles saw the flooding and told them that he was giving them "one directive to stop flooding," to which Plaintiff responded "get the Supervisor down here." *Id.* Plaintiff alleges that he then "unstop the commode, but the room was totally flooded." *Id.* Plaintiff alleges that at that time Defendant Coles sprayed chemical munitions into the cell, resulting in him and his roommate experiencing coughing and loss of oxygen. Plaintiff stated that "someone" then cut off the water to the cell preventing him from washing the chemicals off. Plaintiff alleges that he then asked "why y'all spraying gas when no one is out of control." *Id.* Plaintiff alleges that approximately five minutes after the confrontation with Defendant Coles began, Defendant Mincey came to the door along with Defendant Coles and another corrections officer and threatened additional chemical munitions in a frustrated and profane manner. According to Plaintiff, his cell door was open and he assumed the officers were there "to secure the situation," but, instead, Defendant Mincey fired "a large burst" of chemical munitions "all over [his] back." *Id.* Plaintiff alleges that he had his hands behind his back waiting to be handcuffed and the cell door was slammed on his pinky

finger, but he did not realize it at first because he was most concerned with getting the chemical munitions off his body. *Id*. at 4. Plaintiff alleges that when he realized that his finger was bleeding, he banged on the door and Defendant Coles came to look at his finger. Plaintiff states that "some minutes later" Defendant Mincey and another corrections officer came to the cell and told Plaintiff to "come and get cuff[ed]," whereupon Plaintiff was taken to medical where he was examined and given a shot. Plaintiff alleges that Defendant Thompson came into the medical unit and was told what happened and threatened by Plaintiff with a lawsuit. Plaintiff states that he was then taken to the Medical University of South Carolina ("MUSC") for surgery on his finger. *Id*. Plaintiff alleges that he had been requesting protection from "certain administration" for several months before the October 17, 2012 incident, but that his requests were denied. *Id*. at 5. Plaintiff seeks "a settlement" in the amount of $500,00.00, punitive damages in the amount of $1,000,000.00 from each Defendant, and "automatic departure . . . on parole agreement . . . ." *Id*. at 6.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to

3

survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

III.   Analysis

Defendants raise several points in support of their Motion. They will be separately addressed herein.

A.   Eleventh Amendment

Defendants assert that, in their official capacities, they are entitled to immunity from Plaintiff's claims. ECF No. 46-1 at 5-6. Plaintiff responds that his claims are only against Defendants in their individual capacities. ECF No. 53 at 5-6. Accordingly, with Plaintiff's

clarification in this regard, it is unnecessary for the undersigned to consider Defendants' contentions on this point. However, to the extent that Plaintiff's allegations could be liberally construed as stating official capacity claims, Defendants are all entitled to Eleventh Amendment immunity and Defendants' Motion for Summary Judgment should be granted as to any such claims.

        B.      Excessive Force

Defendants contend that Plaintiff cannot prove his § 1983 claim of excessive force because their use of chemical munitions was a reasonable tactic to restore order when Plaintiff failed to stop flooding his cell after being ordered to do so. ECF No. 46-1 at 8. Plaintiff responds that Defendants' use of chemical munitions and disregard to the safety of his pinky finger were unreasonable because he was not placing any person in danger, and by using chemical munitions against Plaintiff under the circumstances alleged defendants violated a SCDC "Inmate Governance" policy, the SCDC inmate disciplinary policy, and a policy issued by Defendant Thompson regarding how to check on unresponsive inmates. Plaintiff contends that Defendants should have relied on the SCDC inmate disciplinary policy and not chemical munitions to punish him for the flooding. ECF No. 53 at 3, 7. Defendants reply that Plaintiff's evidence is either supportive of Defendants' contentions because it shows physical force could be used under SCDC policy to prevent property damage or irrelevant to the issue in this case because based on different factual scenarios and different times. ECF No. 54 at 2-3.

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d

5

653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive-force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d at 238 (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components. For the subjective component, Plaintiff must prove that Defendant assaulted and restrained him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

The Fourth Circuit has instructed that district courts use the following test in order to analyze the subjective component of the excessive force for Plaintiff's cause of action:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

*Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008). To establish the objective component, Plaintiff must show "that the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation" in the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 2 (quoting *Wilson*, 501 U.S. at 303). When prison officials maliciously and sadistically use force to cause harm, there always exists a constitutional violation regardless of how significant a plaintiff's injury may be. *Id.*; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

The undersigned will discuss each *Iko* factor below:

    (1) The Need for the Application of Force

 Here, it is undisputed that corrections officers such as Defendants Coles and Mincey may use physical force to protect property so long as it is used "only as a last resort in accordance with appropriate state and federal statute and case law" under the SCDC inmate governance policy provided by Plaintiff. ECF No. 53-2 at 8 (SCDC Policy/Procedure, Inmate Governance § 3 (July 1, 2001)). It is also undisputed that the commode in Plaintiff's cell was intentionally stopped up and water was flowing from the cell into other parts of the prison. It is also undisputed that Defendants Coles and Mincey both gave Plaintiff multiple verbal commands to stop the flooding before the chemical munitions were used. It is further undisputed that Plaintiff and his roommate did not heed Defendant Coles' order to stop the flooding. It is undisputed that Plaintiff did not physically attack either Defendant Coles or Defendant Mincey and did not physically harm any other person. There is a dispute however about whether Plaintiff threatened to escape or "bust out" if additional chemical munitions were used after the initial application proved unsuccessful. Defendants Coles and Mincey both aver that Plaintiff made such a threat and rely on that threat of escape to justify their use of chemical munitions followed by an immediate closing of the cell door, ECF Nos. 46-3 at 1; 46-4 at 1; however, Plaintiff specifically denies that he did so. ECF No. 53 at 3. Plaintiff refers to himself as a "non-threat inmate," *id*. at 7, and in his verified Complaint alleges that he was waiting to be handcuffed and taken away before the final bursts of chemical munitions were applied. ECF No. 1 at 3.

 The one dispute among the parties about Plaintiff's verbal response to Defendants Coles' and Mincey's verbal directives does not raise genuine issues of material fact as to this first *Iko* factor because, regardless of whether Plaintiff threatened escape, it is undisputed that Plaintiff refused to stop the flooding in his cell when he was first directed to do so. As a result, physical

7

force of some type was needed to force Plaintiff to comply with orders and to protect property in other areas of the prison from flooding caused by Plaintiff and his roommate. Accordingly, the undersigned finds that the record shows that there was sufficient need for application of force under prong one of *Iko* based on Plaintiff's action and inaction during the incident.

> (2) The Relationship Between the Need and the Amount of Force that was Used

With regard to this second *Iko* factor, the record shows that the "need" was for Plaintiff and his roommate to stop flooding their cell. The "amount of force that was used" was one burst of chemical munitions from Defendant Coles' MK-4 canister and "two bursts of OC spray" from Defendant Mincey's MK-9 canister. ECF No. 46-4 at 1. The evidence shows that the actual amount of OC spray used by Coles was 4 grams, ECF No. 46-7 at 3, and by Mincey was 163 grams. ECF No. 46-8 at 2. While this appears to be a considerable amount of chemical munitions to spray into a closed cell, there is no evidence comparing that amount to safe or proper amounts and, thus, this court must simply consider the amounts shown on the incident reports at their face value. Nevertheless, it is notable that District Judge Cain denied summary judgment in an excessive-force case involving administration of 167 grams of chemical munitions upon a holding that genuine issues of material fact existed as to whether application of 167 grams of mace was a quantity greater than necessary and whether it was administered for the sole purpose of infliction of pain. *Wright v. Mack*, No. 5:12-cv-02232-TMC, 2013 WL 3946286, at **2 n.3, 4-6 (D.S.C. July 31, 2013) (collecting cases from this court addressing amounts of chemical munitions and finding acceptable usage up to 33.5 grams). According to Plaintiff, Defendant Mincey used threatening profanity before spraying additional chemicals into his cell despite Plaintiff having asked why they were being so aggressive when no one was trying to hurt them.

Plaintiff relies on certain portions of a state court legal opinion issued in 2014 in a long-running case against SCDC, wherein the state judge cited expert testimony regarding "SCDC officers" use of "MK-9 crowd control fogger devices in large disbursements in individual closed cells, again contrary to manufacturer instructions and SCDC policy." ECF No. 53-1 at 19; *T.R. v. S. C. Dep't Corrs.*, No. 2005-CP-40-2925 (Richland Cty. Ct. of Common Pleas, filed Jan. 8, 2014). The expert is reported as having said that he had never seen the extent of misusage of MK-9 anywhere else "throughout the country." *Id*. This court may take judicial notice of publicly available documents such as the *T.R.* case, *see Lippman v. United States*, 127 Fed. Cl. 238, 249 (Fed. Cl. 2016); however, while the conclusions in the opinion are troubling, they are not sufficient to create genuine issues of material fact on this *Iko* factor because there is no evidence connecting this Plaintiff or this specific incident of chemical munitions usage to any of the nine instances of usage that the expert witness cited in the opinion indicated that he had reviewed and which formed the basis of his opinion. The findings in the legal opinion relative to chemical munitions usage in SCDC against mentally ill inmates are not relevant to this case and provide no evidence to show that an excessive amount of chemical munitions was used against Plaintiff on October 17, 2012.

Insofar as the need for the use of force is concerned, Plaintiff denies that he threatened to escape his cell and states, under penalty of perjury, that he was a non-risk inmate when the incident occurred. This testimony is in stark contrast to that contained in Defendants Coles and Mincey's affidavits wherein they both state that Plaintiff said he was going to bust out of the cell if they sprayed more chemical munitions. ECF Nos. 46-3 at 1, 46-4 at 1.There is no evidence showing that Defendants Coles and Mincey attempted to use any other form of discipline, other than several verbal directives, to remove Plaintiff from his cell, but Plaintiff asserts that the water

was cut off to his cell at some point before the second burst of chemical munitions was used. ECF No. 53 at 3. Plaintiff asserts that they should not have used the chemical munitions at all, and, instead, they should have used the inmate disciplinary process to correct Plaintiff's behavior. ECF No. 53 at 3, 4. Although Plaintiff presents a copy of the SCDC inmate disciplinary system policy along with his Response, ECF No. 53-3, he does not indicate how that policy creates a genuine issue relating to Defendants' use of force other than to say broadly that Defendants violated the policy. Nevertheless, the record discloses an incident report showing that Plaintiff was, in fact, charged with a disciplinary violation (Code 814) as a result of the incident. ECF No. 46-8 at 2.

While it might be reasonable to spray chemical munitions to subdue a dangerous or out-of-control inmate, it is questionable whether such action is still reasonable where the immediate threat (running water) has ended and the inmate is waiting to be handcuffed and taken away. As a result, taking the facts in the light most favorable to Plaintiff, the undersigned is unable to make a definitive finding with respect to *Iko's* second factor.

>  (3) The Extent of Any Reasonably Perceived Threat that the Application of Force was Intended to Quell

The facts relative to this factor are also in dispute. The evidence shows that there was a factual scenario in which Plaintiff and/or his roommate flooded their cell, allegedly in an attempt to get the attention of a supervisor so Plaintiff could continue to request protective custody, which had been denied to him. The flooding was causing water to drip from the top tier of the institution to the bottom tier. Plaintiff and his roommate ignored the first verbal directive to stop the flooding; however, according to Plaintiff, at some point the water to the cell was turned off. According to Defendants, Plaintiff threatened to escape and charged the door when they threatened to use more chemical munitions. However, Plaintiff specifically denies that he made

the threat or did any kind of threatening behavior. Plaintiff asserts that he was not resisting, but was waiting inside his cell to be handcuffed and removed at the time the second burst was used and the door was slammed on his finger. As a result of this dispute and viewing the record in the light most favorable to the Plaintiff, the undersigned cannot make a definitive ruling on the third *Iko* factor.

>  (4) Any Efforts Made to Temper the Severity of a Forceful Response

The record relevant to this factor shows that Defendants Coles and Mincey used only verbal directives to Plaintiff and his roommate to stop flooding their cell before administering three bursts of chemical munitions into Plaintiff's closed cell. According to Plaintiff, at some point prior to the second use of chemical munitions, the water to the cell was cut off to the cell. It seems logical that if the water could be cut off from outside the cell, then that would be the first option to try before the use of chemical munitions at all. However, it appears that the use of the chemical munitions was the first course of action considered when the verbal directives were not followed. Moreover, Plaintiff and his roommate were prevented from washing the chemicals off because the water was turned off, thus there does not appear to have been any attempt by Defendants Coles or Mincey to mitigate the effects of the chemical munitions usage. In light of Plaintiff's allegations that he was not threatening either Defendant Coles or Mincey physically and that the water had already been turned off, thus eliminating the threatened property damage, the undersigned cannot say that no genuine issues of material fact exist as to the reasonableness of Defendants Cole's and Mincey's failure to attempt alternate means of discipline to bring the situation under control before utilizing chemical munitions as they did in this case.

Based on the above discussion, the undersigned cannot effectively weigh the second, third, or fourth *Iko* factors. Because of the differing accounts of the facts leading to Defendants

11

Coles and Mincey's use of force, the undersigned is unable to recommend that the district court find as a matter of law that these Defendants used force in a good faith effort to maintain or restore discipline and not for the very purpose of causing harm. *See Whitley*, 475 U.S. at 320-21. In his Complaint and Response in Opposition to Summary Judgment, Plaintiff alleges that he was not flooding his cell, was waiting to be handcuffed, and was not refusing to comply with Defendants' direct orders when the second burst of chemical munitions was applied and the cell door was slammed on his pinky finger.[2] Plaintiff denies that he threatened to escape the cell or that he rushed the door. Though Defendants maintain that the chemical munitions were used only in response to Plaintiff's refusal to comply with a direct order, the undersigned is tasked with construing the facts in the light most favorable to Plaintiff. Here, under this standard of review, the undersigned finds that there is a genuine issue of material fact as to whether Defendants' actions were excessive under the Eighth Amendment. *See, e.g., Parker v. Stevenson*, 625 F. App'x 196, 199 (4th Cir. 2015) ("[I]n concluding that the record did not substantiate Parker's allegations, [the Report and Recommendation] failed to view the facts and the inferences drawn therefrom in the light most favorable to Parker."); *Brown v. Eagleton*, No. 4:14-CV-0357-BHH, 2015 WL 5781504, at *2 (D.S.C. Sept. 30, 2015) (where the district court declined to adopt a Report and Recommendation because "it [was] far from clear that the plaintiff's actions threatened prison officials or other inmates [and using] *Whitley* factors, the Court f[ound] that there [was] a genuine issue of fact as to whether the defendant's actions in spraying the plaintiff

---

[2] To the extent that Plaintiff urges that Defendants are liable for injuring his pinky finger by closing the cell door on it, Plaintiff has not presented any testimony or evidence showing that this injury was caused deliberately. Both Defendant Coles and Defendant Mincey aver that they did not intend to injure Plaintiff's finger and this averments stand undisputed. The most that could be said of the pinky injury is that it was caused by negligence. It is well settled that § 1983 does not imposed liability on state actors for negligent behavior. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200-03 (1989).

with mace were 'applied in a good faith effort to maintain or restore discipline.'"); *Wright v. Mack*, No. 5:12-cv-02232, 2013 WL 3946286, at *5 (where the district court adopted a report and recommendation finding there was "a genuine issue of fact as to whether Defendant Mack's actions in spraying Plaintiff with chemical munitions for purportedly refusing to stop yelling and kicking his cell door were 'applied in a good-faith effort to maintain or restore discipline.'").

Based on the genuine issues of material fact in this case, the undersigned recommends that Defendants' Motion for Summary Judgment be denied on Plaintiff's excessive-force claim insofar as it is applicable to Defendants Coles and Mincey. *See Mann v. Failey*, 578 F. App'x 267, 275 (4th Cir. 2014) (holding a plaintiff's presentation of "necessary briefs, affidavits, and corroborative evidence to support his claims" created a jury issue and "disputes of credibility are reserved for a fact finder").

C.   Supervisory Liability

Defendant Thompson, the Associate Warden at Lieber Correctional Institution, contends that Plaintiff's allegations and proof are inadequate to hold him responsible for the actions of his subordinates because he was not personally involved in their use of force. ECF No. 46-1 at 9. Plaintiff responds that there are sufficient allegations and evidence of Defendant Thompson's personal involvement in the other Defendants' use of force because he denied Plaintiff's request for protective custody and he wrote a memorandum dated April 19, 2012, containing directions to his employees about using chemical munitions to determine whether an inmate is unresponsive.[3] Plaintiff contends that Defendant Thompson did not properly train the other Defendants in the proper usage of chemical munitions. ECF No. 53 at 10, 13. Defendant

---

[3] This Plaintiff has previously and unsuccessfully used this same argument in a different case before this court. *China v. Marksberry*, No. 5:13-cv-91-JMC, 2014 WL 4402806, at **3, 5 (D.S.C. Sept. 4, 2014).

Thompson replies that Plaintiff's exhibits, including three requests to staff members and one Step 1 grievance form, all addressed to other Lieber personnel, do not show that Defendant Thompson knew about Plaintiff's request for protective custody. ECF No. 54 at 1. Defendant Thompson also replies that his drafting of a completely unrelated memorandum about the use of chemical munitions does not show that he had sufficient personal involvement in this case.

To assert a plausible § 1983 claim against any particular public official, Plaintiff's allegations must show a causal connection or affirmative link between the conduct of which the plaintiff complains and the official sued. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (a § 1983 plaintiff must show that he suffered a specific injury as a result of specific conduct of a defendant, and an affirmative link between the injury and that conduct); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977) (for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As a general rule, the doctrine of vicarious liability or *respondeat superior* is not available to a § 1983 plaintiff as a means to create liability of a state-actor supervisor for the acts or his/her subordinate. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). There is a limited exception to the prohibition against imposing *respondeat superior* or vicarious liability on supervisory personnel in § 1983 cases, which has been enunciated in cases such as *Slakan v. Porter*, 737 F.2d 368, 370-75 (4th Cir. 1984). Supervisory officials like Defendant Thompson may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates so long as the facts alleged satisfy the Fourth Circuit Court of Appeals' established three-part test for supervisory liability under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to

citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

In *Randall v. Prince George's County*, 302 F.3d 188, 206 (4th Cir. 2002), the Fourth Circuit concluded that, "[u]nder the first prong of *Shaw*, the conduct engaged in by the supervisor's subordinates must be 'pervasive,' meaning that the 'conduct is widespread, or at least has been used on several different occasions.'" Furthermore, in establishing "deliberate indifference" under *Shaw's* second prong, a plaintiff "[o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* (quoting *Slakan*, 737 F.2d at 373); *see also Green v. Beck*, 539 F. App'x 78, 81 (4th Cir. 2013) (4th Cir. 2013) (alleged failure of supervisory officials to investigate grievances not sufficient to establish liability under § 1983).

The *Slaken* exception is not satisfied in this case because there is no proof showing any personal knowledge (or even subjective knowledge) on Defendant Thompson's part of the problems that Plaintiff alleges he had during the incident between himself and Defendants Coles and Mincey. Plaintiff has presented nothing showing that Defendant Thompson was physically present during the incident and did nothing to prevent it or that he knew about his subordinates' allegedly excessive use of chemical munitions but did nothing to correct it. Although Plaintiff does allege that Defendant Thompson saw him in the medical unit after the incident, that after-the-fact knowledge does not show the required personal involvement or subjective knowledge of

15

Defendants Coles and Mincey's activities. Furthermore, Plaintiff's reliance on a memorandum authored by Defendant Thompson regarding the appropriate use of chemical munitions to determine when an inmate is unresponsive does not show any personal involvement in this particular case because Plaintiff was not unresponsive or feigning unresponsiveness when the force was applied. Although Plaintiff makes much of the alleged lack of training in proper use of chemical munitions, he does not present any evidence showing that Defendant Thompson has responsibility for any such training even though he, himself, states that he is generally responsible for "institutional operations, security, inmate housing, and the safety of inmates and staff." ECF No. 46-5 at 1. In short, there is simply no proof of personal involvement or knowledge and tacit approval of the other Defendants' action. Thus, regardless of how pervasive the alleged problems at Lieber might have been, Defendant Thompson cannot be found liable for them simply based on his job as a supervisor at the prison. Moreover, there are no allegations from which any potential responsibility of Thompson for an unconstitutional SCDC policy or custom could be established nor does Plaintiff seek either injunctive or declaratory relief.[4] *See Sindram v. Saxton*, 955 F.2d 42, at \*1 (4th Cir. 1992) (unpublished) (recognizing a policy-enforcement exception to the no-vicarious-liability rule and citing *Monell*); *see also Franks v. Ross*, 313 F.3d 184, 197 (4th Cir. 2002) (Eleventh Amendment does not prevent agency officials from suit for prospective injunctive or declaratory relief, citing *Ex Parte Young*, 209 U.S. 123 (1908)). The lack of any proof establishing a prima facie § 1983 claim against Defendant Thompson requires that Defendants' Motion for Summary Judgment be granted as to any claim

---

[4] Plaintiff's request for "automatic departure" could be deemed a request for injunctive relief; however, it is an invalid request because release from confinement is not an available remedy under § 1983. *See, e.g., McFadden v. South Carolina*, No. 4:11-cv-TLW-SVH, 2011 WL 6318594, at \*4 (Nov. 21, 2011) (citing *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) and *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973)), *report and recommendation adopted*, 2011 WL 6326121 (D.S.C. Dec. 15, 2011).

against him and that the Complaint be dismissed as to Defendant Thompson.

### D.  Qualified Immunity

Defendants assert that they are entitled to qualified immunity. ECF No. 46-1 at 11-14. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case -- that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted -- then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court does not indisputably show that Defendants Coles and Mincey performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Viewed in the light most favorable to Plaintiff, Defendants Coles and

Mincey could have transgressed Plaintiff's constitutional rights. Thus, the undersigned recommends that Defendants Coles and Mincey not be granted qualified immunity.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 46, be granted only to the extent Defendants seek dismissal of any claims against them in their official capacities and to the extent that Defendant Thompson is named as a Defendant. The undersigned recommends Defendants' Motion otherwise be denied.

IT IS SO RECOMMENDED.

December 13, 2016                                                          Kaymani D. West
Florence, South Carolina                                                United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 2317**
> **Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).